IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 16-cv-01779-RBJ

DEBBI POTTS, a Colorado resident,

    Plaintiff,

v.

CENTER FOR EXCELLENCE IN HIGHER EDUCATION, INC., an Indiana Corporation f/k/a CollegeAmerica Denver, Inc.,

    Defendants.

---

## ORDER

---

This order addresses defendant's motion to dismiss [ECF No. 11]. For the reasons given below, the motion is GRANTED.

## BACKGROUND

Debbi Potts worked as a campus director for CollegeAmerica, a predecessor to the Center for Excellence in Higher Education ("the Center"), for several years until resigning on July 16, 2012. ECF No. 1 at ¶¶ 7, 13. The Center operates a number of for-profit colleges in the United States. *Id.* ¶ 8. Ms. Potts claims she resigned because she was upset by the Center's business practices, which she believes violate Title IV of the Higher Education Act of 1965. *Id.* ¶ 13. A month later, the Center's Chief Executive Officer negotiated an agreement ("the Agreement") with Ms. Potts regarding unpaid wages, unemployment compensation, and other employment matters. *Id.* ¶ 17. Under the Agreement, Ms. Potts received $7,000 in exchange for a promise to

1

(1) "refrain from . . . contacting any governmental or regulatory agency with the purpose of filing any complaint or grievance" concerning the Center's business practices; (2) "direct any complaints or issues against [the Center] that may arise with disgruntled staff, students, or the public at large to" the Center's complaint hotline; and (3) "not intentionally with malicious intent . . . disparage the reputation of" the Center. *Id.* ¶ 21; ECF No. 12 at 4. Nevertheless, on February 27, 2013 Ms. Potts filed a complaint with the Center's accrediting agency alleging that the Center provided false information to the agency in violation of the False Claims Act ("FCA"). ECF No. 1 at ¶ 22.

On March 25, 2013 the Center filed a lawsuit in state court against Ms. Potts for breach of the Agreement. *Id.* ¶ 34. The Center initially claimed only that Ms. Potts violated the Agreement's non-disparagement provision by publishing written statements to another former employee of the Center. ECF No. 12 at 5. But when the Center later learned of Ms. Potts' report to the accrediting agency, it moved to amend its complaint. *Id.* Its motion was granted, and on February 4, 2014 the Center filed an amended complaint alleging that Ms. Potts also violated the Agreement by reporting the Center to the accrediting agency. ECF No. 1 at ¶¶ 36–37.

On July 12, 2016 Ms. Potts filed suit in this Court claiming that the Center violated the FCA's anti-retaliation provision by harassing her with the state court lawsuit. *Id.* ¶ 1. Ms. Potts claims she engaged in protected activity when she reported the Center to its accrediting agency, and the Center unlawfully retaliated by amending its complaint to punish her for this protected activity. *Id.* ¶ 55–56. Defendants have responded with a motion to dismiss. ECF No. 11.

**STANDARD OF REVIEW**

To survive a 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While the Court must accept the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff, *Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th Cir. 2002), purely conclusory allegations are not entitled to be presumed true, *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). However, so long as the plaintiff offers sufficient factual allegations such that the right to relief is raised above the speculative level, he has met the threshold pleading standard. *See Twombly*, 550 U.S. at 556.

**ANALYSIS**

In support of its motion to dismiss, the Center argues: 1) the FCA's anti-retaliation provision does not apply to post-employment retaliation; 2) Ms. Potts' claim is barred by the statute of limitations; 3) Ms. Potts waived her right to bring an FCA retaliation claim; and 4) Ms. Potts fails to allege an element of her retaliation claim—that the Center knew she was acting in furtherance of the FCA by reporting the Center to the agency. ECF No. 12 at 2–3. I agree that the first argument is dispositive, so I need not address the Center's three other defenses.

**A.  Post-Employment Retaliation.**

The FCA imposes liability on organizations that knowingly defraud the government. *See* 31 U.S.C. § 3729(a)(1)(A)–(B). Because employees are often in the best position to identify and report fraud, the FCA contains a whistleblower provision that protects them from retaliation by these organizations. *Id.* § 3730(h)(1). This anti-retaliation provision states:

> Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.

*Id.*

The main issue in this case is whether § 3730(h)(1) covers a *former* employee's actions and her former employer's subsequent retaliation against her. The FCA does not define "employee, contractor, or agent," so Ms. Potts advances two arguments for why this provision should apply to her. First, she argues that the FCA's legislative history dictates that it covers former employees. ECF No. 27 at 6–7. Second, she argues that even if § 3730(h)(1) applies only to current employees, she is technically a contractor and is therefore still covered. *Id.* at 12–13. Neither argument is persuasive.

### 1. Section 3730(h)(1) Does Not Cover Post-Employment Retaliation.

Before 2009, the FCA's anti-retaliation provision covered "employees" only. 31 U.S.C. § 3730(h)(1) (2006). In 2009, however, Congress amended § 3730(h)(1) to expand its scope to include "contractors" and "agents" as well. Fraud Enforcement and Recovery Act of 2009, Pub. L. No. 111-21, § 4, 123 Stat. 1617, 1624–25 (2009). Ms. Potts relies on pre- and post-amendment legislative history to argue that § 3730(h)(1) applies to former employees who suffer post-employment retaliation. ECF No. 27 at 6, 13 (citing S. Rep. No. 99-345, at 34 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5299, and S. Rep. No. 110-507, at 27 (2008)).

"Statutory interpretation, as we always say, begins with the text . . . ." *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016). The Court may consider legislative history only if the statute at hand

4

is ambiguous. *United States v. O'Brien*, 686 F.2d 850, 852 (10th Cir. 1982). "A statute is ambiguous if it is reasonably susceptible to more than one interpretation." *Nat'l Credit Union Admin. Bd. v. Nomura Home Equity Loan, Inc.*, 764 F.3d 1199, 1226 (10th Cir. 2014).

Ms. Potts' legislative history argument thus presupposes that § 3730(h)(1) can be read in multiple reasonable ways, but the text is unambiguous. The dictionary definition of "employee" is "[a] person who *works* for an employer," i.e., a current employee. *Employee, n.*, Oxford English Dictionary Online, http://www.oed.com/view/Entry/61374 (emphasis added). Section 3730(h)(1)'s use of the word "employee" without modification—such as specifying "current or former employee"—suggests that this word carries its default meaning. *See Walters v. Metro. Educ. Enterprises, Inc.*, 519 U.S. 202, 207 (1997) ("In the absence of an indication to the contrary, words in a statute are assumed to bear their 'ordinary, contemporary, common meaning.'" (quoting *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 388 (1993)).

Section 3730(h)(1)'s context compels this reading. The provision defines retaliation to include when an "employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment." 31 U.S.C. § 3730(h)(1). Four of these retaliatory actions can be directed only at current employees—discharge, demotion, suspension, or any other discrimination related to the "terms" or "conditions" of one's employment. Indeed, the provision introduces these actions with the present-tense verb "is," as in "is discharged" or "is demoted." Although a company could threaten or harass a former employee just as it could a current employee, it would be anomalous for two of the six listed retaliatory acts to cover former employees while the rest do

not. *See Dole v. United Steelworkers of Am.*, 494 U.S. 26, 36 (1990) ("The traditional canon of construction, *noscitur a sociis*, dictates that 'words grouped in a list should be given related meaning.'" (quoting *Massachusetts v. Morash*, 490 U.S. 107, 115 (1989)). And reading "employee" to mean "current employee" is especially fitting in light of § 3730(h)(1)'s catchall residual clause, which covers "other" actions that likewise "discriminate[] . . . in the terms and conditions of employment." If the enumerated retaliatory acts were meant to apply both to current and former employees, then the residual clause should have been drafted to cover all workers who were, for example, "in any other manner discriminated against in the terms and conditions of employment *or retaliated against after such employment ended*." *Cf. Yates v. United States*, 135 S. Ct. 1074, 1086 (2015) ("Where general words follow specific words in a statutory enumeration, the general words are [usually] construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." (quoting *Washington State Dep't of Soc. and Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371, 384 (2003))).

Moreover, all of the substantive relief available to covered employees can apply only to an individual who took protected actions during her tenure as an employee. Section 3730(h)(1) provides that covered employees "shall be entitled to all relief necessary to make [them] whole," while § 3730(h)(2) spells out the available forms of relief as follows:

> Relief under paragraph (1) shall include reinstatement with the same seniority status that employee, contractor, or agent would have had but for the discrimination, 2 times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees.

31 U.S.C. § 3730(h)(2). Someone who took action and faced retaliation after leaving a company cannot enjoy reinstatement or back pay, since there is no missing job or compensation that she "would have had but for the [retaliatory] discrimination." That leaves only reimbursement for "special damages" like emotional distress, *see Neal v. Honeywell, Inc.*, 191 F.3d 827, 832 (7th Cir. 1999), as well as litigation costs and attorneys' fees. Yet Ms. Potts primarily seeks an injunction here, even though the FCA does not authorize such relief. *See* 31 U.S.C. § 3730(h)(2). She also seeks "special damages," but does not identify what damages she may be entitled to collect other than "attorneys' fees and costs." *See* ECF No. 1 at 13. It strains credulity to suggest that Ms. Potts could be made whole by leaving the alleged retaliation unabated and restoring only her litigation expenses for this action. *Cf.* 42 U.S.C. § 2000e-5(g) (providing "any other equitable relief as the court deems appropriate" to vindicate Title VII's anti-retaliation provision, which protects current and former employees alike). Thus, the only reasonable interpretation is that the FCA's anti-retaliation provision covers current employees to the exclusion of former employees.

This understanding is consistent with the interpretations of other courts. The overwhelming majority of courts that have considered the issue have found that § 3730(h)(1) does not apply to post-employment retaliation, and the only courts finding otherwise have done so on idiosyncratic grounds. *Compare U.S. ex rel. Head v. Kane Co.*, 798 F. Supp. 2d 186, 208 (D.D.C. 2011) ("The plain language . . . clearly establishes that Section 3730(h) applies only to the employment context and, therefore, cannot extend to claims for retaliatory action occurring solely after a plaintiff has been terminated from his job."), *Elkharwily v. Mayo Holding Co.*, 84 F. Supp. 3d 917, 927 (D. Minn. 2015), *aff'd on other grounds*, 823 F.3d 462 (8th Cir. 2016), *U.S.*

*ex rel. Tran v. Computer Scis. Corp.*, 53 F. Supp. 3d 104, 138 (D.D.C. 2014), *Weslowski v. Zugibe*, 14 F. Supp. 3d 295, 306 (S.D.N.Y. 2014), *Master v. LHC Group Inc.*, No. 07–1117, 2013 WL 786357, at *6 (W.D. La. March 1, 2013), *Bechtel v. Joseph Med Ctr.*, No. MJG–10–3381, 2012 WL 1476079, at *9–10 (D. Md. Apr. 26, 2012), *Poffinbarger v. Priority Health*, No. 1:11-CV-993, 2011 WL 6180464, at *1 (W.D. Mich. Dec. 13, 2011), *and U.S. ex rel. Wright v. Cleo Wallace Centers*, 132 F. Supp. 2d 913, 928 (D. Colo. 2000), *with Ortino v. Sch. Bd. of Collier Cnty.*, No. 2:14–cv–693–FtM–29CM, 2015 WL 1579460, at *3 (M.D. Fl. April 9, 2015) (declining to dismiss a post-employment retaliation claim on the view that the FCA's text does not "provide any guidance regarding the proper interpretation of the term ['employees']" without analyzing this text, instead focusing on legislative history and policy concerns), *and Haka v. Lincoln Cnty.*, 533 F. Supp. 2d 895, 917 (W.D. Wisc. 2008) (recognizing a claim for post-employment retaliation in the decision not to rehire the plaintiff, reasoning that such hiring choices concern "the terms and conditions of employment").[1]

Additionally, Ms. Potts' argument that the Supreme Court's construction of Title VII's anti-retaliation provision should apply to § 3730(h)(1) is unpersuasive. *See* ECF No. 27 at 8. There are important textual differences between the two provisions. In *Robinson v. Shell Oil Co.*, the Court found Title VII's provision facially ambiguous because the term "employees" was

---

[1] Ms. Potts' other cases do not squarely address the question of whether § 3730(h)(1) applies to former employees, instead merely allowing for that possibility in dicta. *U.S. ex rel. Feaster v. Dopps Chiropractic Clinic, LLC*, No. 13-1453-EFM-KGG, 2016 WL 3855560, at * 5 (D. Kan. July 15, 2016) (allowing plaintiff to add a "post-termination retaliation" claim to his amended complaint without discussing § 3730(h)(1)); *Fitzimmons v. Cardiology Assocs. of Fredericksburg, Ltd.*, No. 3:15cv72, 2015 WL 4937461, at *7 (E.D. Va. Aug. 18, 2015) ("The Court will not, at this early pleading stage, find that the anti-retaliation provision of the FCA cannot cover Fitzsimmons's claims for post-termination" retaliation); *Tang v. Vaxin, Inc.*, No. 2:13-CV-401-SLB, 2015 WL 1487063, at *5 (N.D. Ala. Mar. 31, 2015) (writing that "[o]ne could characterize a frivolous post-termination counterclaim as harassment under 31 U.S.C. § 3730(h)(1)," but then dismissing this claim for failure to comply with Rule 8 of the Federal Rules of Civil Procedure); *Glynn v. Impact Sci & Tech., Inc.*, 807 F. Supp. 2d 391, 419 (D. Md. 2011) (dismissing a post-employment retaliation claim on summary judgment, but allowing that such a claim may survive on different facts).

not accompanied by a "temporal qualifier," Title VII's definition of "employee" "is consistent with either current or past employment," and "a number of other provisions in Title VII use the term 'employees' to mean something more inclusive or different than 'current employees.'" 519 U.S. 337, 341–45 (1997).  By contrast, § 3730(h)(1)'s catchall residual clause is limited to retaliation "in the terms and conditions of employment," most of § 3730(h)(1) is consistent only with current employment, and Ms. Potts identifies no other provisions of the FCA in which "employees" means anything other than "current employees."  *See* 31 U.S.C. § 3730(h)(1); ECF No. 27.  *Robinson*'s discussion of policy considerations thus has no place in interpreting the FCA's clear text.  *See* 519 U.S. at 345–46.

Accordingly, I find that § 3730(h)(1) does not apply to post-employment retaliation, and therefore that Ms. Potts' complaint fails to state a claim to the extent that she relies on this theory.

### 2. Ms. Potts Was Not a Contractor.

In the alternative, Ms. Potts claims that she became a lifelong "contractor" under § 3730(h)(1) by signing the Agreement and forever promising to "direct any complaints or issues against [the Center] that may arise with disgruntled staff, students, or the public at large" to the Center's complaint hotline.  The relevant definition of "contractor" is "one who contracts to do work for or supply goods to another."  *Contractor*, Black's Law Dictionary (10th ed. 2014).  But Ms. Potts did not agree to perform any work for the Center; she agreed not to report the Center herself and, in essence, not to encourage others to report the Center either.  The contingent language in the Agreement—"direct any complaints . . . that *may* arise"—reflects that Ms. Potts could discharge her contractual obligations without referring anyone to the complaint hotline at

9

all. And Ms. Potts does not claim that she has ever performed or plans someday to perform any work referring such complaints. *See* ECF No. 27. Ms. Potts was paid to keep quiet, and creative lawyering cannot turn the payment of hush money into the basis for an everlasting employment-like relationship.

Similarly, Ms. Potts' reliance on a broader definition of "contractor" as "[a] party to a contract" is misplaced. *See* ECF No. 27 at 12 (quoting *Contractor*, Black's Law Dictionary (10th ed. 2014)). Section 3730(h)(1) did not intend to protect any person who is a party to a contract regardless of whether that contract requires them to do work for someone else. Instead, the words "contractor" and "agent" were added to §3730(h) in the 2009 amendments merely to expand the anti-retaliation provision's scope to include workers other than "employees." *See, e.g.*, *Vander Boegh v. EnergySolutions, Inc.*, 772 F.3d 1056, 1062–63 (6th Cir. 2014) ("Congress intended to . . . extend protection to 'individuals who are not technically employees within the typical employer[-]employee relationship, but nonetheless have a contractual or agent relationship with an employer.'" (quoting *U.S. ex rel. Abou-Hussein v. Sci. Applications Int'l Corp.*, No. CIV.A. 2:09-1858-RMG, 2012 WL 6892716, at *3 (D.S.C. May 3, 2012))); *Wichansky v. Zowine*, No. CV-13-01208-PHX-DGC, 2014 WL 289924, at *3 (D. Ariz. Jan. 24, 2014) ("Cases that examine the legislative history have concluded that the 2009 amendments were intended to retain the requirement that an FCA defendant have some employer-type relationship with the plaintiff.").

## ORDER

For the foregoing reasons, Defendant's Motion to Dismiss Plaintiff's Complaint Pursuant to FRCP 12(b) [ECF No. 11] is GRANTED.

DATED this 24th day of March, 2017.

BY THE COURT:

_____

R. Brooke Jackson
United States District Judge

11